Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone: (602) 482-4300
Facsimile: (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Wendy S. Vaughan*

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Wendy S. Vaughan, | Case No. |
| Plaintiff, | **COMPLAINT** |
| v. | |
| Reliance Standard Life Insurance Company; Medtronic, Inc.; Medtronic, Inc. Long Term Disability Plan, | |
| Defendants. | |

Now comes the Plaintiff Wendy S. Vaughan (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

*Jurisdiction*

1. Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover

1 employee benefits.  In addition, this action may be brought before this Court pursuant to 28 U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

### *Parties*

2. Plaintiff is a resident of Maricopa County, Arizona.

3. Upon information and belief, Medtronic, Inc. (hereinafter referred to as the "Company") sponsored, administered and purchased a group long-term disability insurance policy which was fully insured by Reliance Standard Life Insurance Company (hereinafter referred to as "Reliance").  The specific Reliance long-term disability group insurance policy is known as Group Policy No.: LTD 123735 (hereinafter referred to as the "Policy").  The Company's purpose in sponsoring, administering and purchasing the Policy was to provide long term disability insurance for its employees.  Upon information and belief, the Reliance Policy may have been included in and part of an employee benefit plan, specifically named the Medtronic, Inc. Long Term Disability Plan (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits.  At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

4. Upon information and belief, Reliance functioned as the claim administrator of the policy; however, pursuant to the relevant ERISA regulation, the Company and/or the Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in Reliance.

5. Reliance operated under a conflict of interest in evaluating Plaintiff's long-term disability claim due to the fact that it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled, as well as the payor of benefits.

6. Reliance's conflict of interest existed because if it found Plaintiff was disabled and entitled to disability benefits, it was then financially liable for the payment of those benefits.

7. The Company, Reliance and the Plan conduct business within Maricopa County and all events giving rise to this Complaint occurred within Arizona.

*Venue*

8. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

*Nature of the Complaint*

9. Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and the relevant Policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits in the form of "Regular Occupation" benefits as defined in the Plan and the relevant Policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), as well as any other non-disability employee benefits she may be entitled to from the Company, the Plan and/or any other Company Plan as a result of being found disabled in this action. The "Regular Occupation" definition of disability applied to Plaintiff's long-term disability claim for the first twelve (12) months of disability, which ended on approximately July 5, 2015. The "Regular Occupation" definition of disability period in the Plan and/or Policy ended months *before* Reliance made its final denial on October 15, 2015.

10. Plaintiff also seeks a determination in this action that she is disabled and meets the Plan and/or Policy's "Any Occupation" definition of disability which began to apply to Plaintiff's claim on or after July 6, 2015. All the evidence Plaintiff submitted to Reliance during its administrative review and prior to its final administrative denial on

October 15, 2015, proves that she meets both the "Regular Occupation" and "Any Occupation" definitions of disability in the Plan and/or Policy. Whether Plaintiff is disabled and meets the Plan and/or Policy's "Any Occupation" definition of disability is ripe. All of Plaintiff's aforementioned evidence submitted to Reliance proves that she meets this definition of disability. Moreover, Plaintiff submitted evidence to Reliance which supports that she meets this definition during the "Any Occupation" timeframe and Reliance made its final denial on October 15, 2015, many months into and during the "Any Occupation" timeframe.

11. After working for the Company as a loyal employee for over ***thirty-four (34) year***s, Plaintiff became disabled on or about January 6, 2014, due to serious medical conditions and was unable to work in her prior occupation with the Company as a Principal Reliability Technician. Due to her disabling medical conditions, Plaintiff has remained "Regular Occupation" and "Any Occupation" disabled as those terms are defined in the Plan and/or Policy since January 6, 2014, and she has not been able to return to any type of gainful employment.

12. Following the onset of Plaintiff's disability, she filed a claim for short-term disability benefits through the Company's self-insured disability Plan which constituted a payroll practice wherein her benefits were paid directly by the Company. The Company retained an independent third party administrator named Matrix Absence Management (hereinafter referred to as "Matrix") to administer its short-term disability Plan and to make claims decisions. Using a definition of disability similar to the long-term disability Plan and/or Policy's "Regular Occupation" definition of disability, Matrix found that Plaintiff was disabled and unable to work in her occupation with the Company for the maximum 26 weeks of short-term disability benefits.

13. Matrix's short-term disability claim file was provided to Reliance during its review of Plaintiff's claim and is included in its long-term disability claim file. However, neither the substance of Matrix's review, its approval or any of the evidence it used to approve Plaintiff's short-term disability claim was referenced by Reliance in any of its long-term disability denials.

14. The Company's short-term disability Plan contained a "Regular Occupation" definition of disability that was very similar, if not identical to the "Regular Occupation" definition of disability in Reliance's long-term disability Plan and/or Policy.

15. Plaintiff alleges that the approval of her short-term disability claim by Matrix, an independent fiduciary, operating without a conflict of interest and using a similar definition of disability as did Reliance, is relevant evidence of the decision an un-conflicted fiduciary made in Plaintiff's claim and evidence of Reliance's conflict of interest at work when it denied her claim. Matrix's approval and the fact that Reliance did not reference its approval in its review is evidence of the unreasonableness of its denial of Plaintiff's long-term disability claim.

16. Plaintiff alleges that Matrix's approval of her short-term disability claim is relevant evidence that demonstrates Reliance's financial conflict of interest and its potential liability in her long-term disability claim if it approved it, were significant and motivating factors with regard to why it denied it.

17. Plaintiff's long-term disability claim with Reliance has a present value of hundreds of thousands of dollars if she remains disabled throughout the Policy's maximum date for the payment of benefits. Reliance was aware of the present value of Plaintiff's long-term disability claim and this fact was a significant and motivating factor with regard to why Reliance denied it.

18. Following the exhaustion of her short-term disability claim (benefits), Plaintiff then filed for long-term disability benefits under the relevant Policy which was administered by Reliance. Reliance made every decision in Plaintiff's long-term disability claim, which was to deny it.

19. Upon information and belief, the relevant Reliance Plan and/or Policy's definition of disability which governs Plaintiff's long-term disability claim is as follows:

> "Totally Disabled" and "Total Disability" mean, that as a result of an Injury or Sickness:
>
> (1)   during the Elimination Period and for the first 12 months for which a Monthly Benefit is payable, an Insured cannot perform the material duties of his/her Regular Occupation…
>
> (2)   after a Monthly Benefit has been paid for 12 months, an insured cannot perform the material duties of Any Occupation. We consider the Insured Totally Disabled if due to an Injury or Sickness he or she is capable of only performing the material duties on a part-time basis or part of the material duties on a Full-time basis.

20. To prove and perfect her claim for long-term disability benefits, Plaintiff submitted to Reliance medical evidence which supported her allegation that she met any definition of disability as defined in the relevant Plan and/or Policy.

21. In a letter dated October 29, 2014, Reliance informed Plaintiff it was denying her claim for long-term disability benefits.

22. As part of its initial review of Plaintiff's claim before its October 29, 2014 denial, Reliance obtained a medical records only "paper review" from Robert Cooper, M.D., who is a consulting physician for Reliance's third party vendor, Professional Disability Associates (hereinafter "PDA"). Upon information and belief, PDA has a long business relationship with the disability insurance industry by providing the type of medical records

reviews as occurred in Plaintiff's case. Plaintiff alleges PDA may derive a significant amount of annual revenue from its relationship with the disability insurance industry and as a result, may not have had an incentive to implement a system to monitor the independence and objectiveness of the physicians it retains to perform records reviews. Plaintiff alleges that in the review of her claim, Dr. Cooper was not independent, objective or impartial with regard to the opinions he rendered regarding whether Plaintiff was disabled and that as a result, he favored PDA and/or Reliance.

23.  Upon information and belief, Plaintiff alleges Dr. Cooper may be a long time medical consultant for the disability insurance industry, PDA and/or Reliance.  As a result, Plaintiff believes Dr. Cooper may have an incentive to protect his own consulting relationship with the disability insurance industry, PDA and/or Reliance by providing medical records only paper reviews, which selectively review or ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies and/or Reliance and which supported the denial of Plaintiff's long-term disability claim.

24.  Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed Reliance's October 29, 2014 denial of her disability claim.

25.  As part of its review, Plaintiff underwent a medical examination with a physician named Dr. McCrary. In retaining Dr. McCrary for the examination, Reliance did not provide a full and fair review and violated ERISA, specifically 29 CFR 2560.503-1, by not consulting with an appropriate medical professional during its review of Plaintiff's claim. Plaintiff alleges that Dr. McCrary did not have the appropriate medical training, background or expertise to evaluate her most disabling medical conditions and the functional limitations which preclude her from working in any occupation.

26. In support of her appeal and to perfect her claim for long-term disability benefits, Plaintiff submitted to Reliance additional medical, vocational and lay witness evidence which demonstrated that she met any definition of disability set forth in the Plan and/or Policy.

27. Plaintiff submitted an Independent Medical Examination report authored by a board certified physician specialist who after examining Plaintiff on June 18, 2015 and reviewing her medical records, opined, "Yes, I do believe that due to Ms. Vaughan's history and nature of her condition and my evaluation, it is reasonable to assume she has been unable to work in any occupation since January 3, 2014 and will continue to be indefinitely."

28. Plaintiff also submitted to Reliance a June 12, 2015 narrative letter authored by another board certified physician specialist who opined she was unable to work in any occupation due to her medical conditions.

29. Plaintiff also submitted to Reliance a June 30, 2015 narrative letter authored by another treating medical professional who opined that Plaintiff was unable to work in any occupation due to her medical conditions.

30. Further supporting her claim, Plaintiff submitted a Functional Capacity Evaluation report from a qualified physical therapist dated June 23, 2015, who after examining Plaintiff, administering a several hour work evaluation, reviewing her medical records/evidence, the definition of disability and interviewing her, opined, "The FCE results do not support a return to work as a Principal Reliability Technician or any work including sedentary work due to a combination of her medical conditions and the restrictions and limitations they impose."

31. In further support of her claim, Plaintiff submitted a report from a certified vocational rehabilitation specialist dated June 27, 2015, who after personally interviewing Plaintiff, analyzing her job with the Company and the material duties it required, reviewing Plaintiff's evidence, her medical records and both the "Regular Occupation" and "Any Occupation" definitions of disability in the Policy, opined, "From a vocational standpoint she fully meets the definition of disability in that she is unable to return to her prior occupation or any occupation that may exist in the national economy."

32. Plaintiff also submitted updated medical records from each of her treating providers and a list of her current medications, as well as the side effects these medications cause and the impact they have on her ability to work in any work environment so Reliance could consider it in its determination.

33. In addition to the medical records and reports submitted to Reliance, Plaintiff submitted four (4) sworn affidavits from herself, her mother, her son, and her long-time friend, who all confirmed Plaintiff is unable to work in any occupation and that her medical conditions had not improved in any way since her date of disability.  In her affidavit, Plaintiff also commented on Dr. McCrary's inadequate and superficial examination of her which raises legitimate questions about whether he was the appropriate medical professional to evaluate her medical conditions, her inability to work and also the accuracy of his opinions.

34. As part of its review of Plaintiff's claim for long-term disability benefits, Reliance again obtained a medical records only "paper review" from a physician named Elena Schiopu, M.D. who was retained by Reliance's third party vendor, the Medical Consultants Network (hereinafter referred to as "MCN") at Reliance's request.

35.     Upon information and belief, Plaintiff alleges that MCN has an extensive business relationship with the disability insurance industry and also potentially with Reliance.  Recent discovery answers provided in an Arizona district court case involving an ERISA disability claim titled *Robles v. Liberty Life Assurance Company of Boston*, *et al*., 2:15-cv-00160-DTF, provides evidence of MCN's relationship with the industry (*See* Exhibit "A" to Complaint).  Liberty Life Assurance Company of Boston, a large group ERISA disability insurer in the United States, but only one of many insurers like Reliance in the marketplace, confirmed in interrogatories that MCN provided an increasingly consistent number of file reviews (medical records reviews) over the last several years:

> 2010: 1045 reviews
> 2011: 1228 reviews
> 2012: 1311 reviews
> 2013: 1615 reviews
> 2014: 1759 reviews

Liberty also confirmed in its interrogatories that it paid MCN a significant and dramatically increasing sum of money each year for its services as follows:

> 2012: $   956,397.92
> 2013: $ 1,235,722.67
> 2014: $ 1,424,277.04

36.     Liberty's answers confirm that it paid MCN approximately ***49% more*** in 2014 than it did only two (2) years earlier in 2012.  Plaintiff alleges Liberty's discovery answers provide ample evidence that MCN may have an extensive and important relationship with the disability insurance industry, and potentially Reliance.  Reliance, similar to Liberty, is only one of many disability insurance companies who is a customer of MCN and who uses its medical records review services.

37. Plaintiff alleges that MCN's potentially extensive relationship with the disability insurance industry may provide it with an incentive to not implement a system to monitor the independence and impartiality of the physicians it chooses for its reviews and/or the opinions they render, such as occurred in Plaintiff's claim. Plaintiff alleges that Dr. Schiopu's opinions are biased and the opinions she expressed in her report confirms that she only looked for reasons to minimize and de-emphasize Plaintiff's evidence in order to provide Reliance with evidence to support a denial of the claim.

38. Due to its extensive business relationship with the disability insurance industry and Reliance, Plaintiff alleges MCN may not be independent or impartial, and may not have implemented a system or process to regularly and consistently monitor the independence and impartiality of the medical professionals that it retains to perform the type of medical reviews that it provided to Reliance in Plaintiff's claim. As a result, Plaintiff alleges that due to MCN's relationship with the disability industry and Reliance, as well as Dr. Schiopu's relationship with MCN, the disability industry and potentially Reliance, she was not independent, objective or impartial regarding the opinions she rendered in Plaintiff's claim.

39. Plaintiff alleges Dr. Schiopu may be frequently retained by MCN and/or Reliance and may be a long time consultant for the disability insurance industry. As a result, Dr. Schiopu may be biased and have an incentive to protect her own consulting relationship with the disability insurance industry and/or Reliance by providing medical records only paper reviews, which selectively review, minimize and/or ignore evidence such as occurred in Plaintiff's claim in order to provide opinions and report(s) which are favorable to insurance companies and which supported the denial of Plaintiff's claim. The adversarial tone of Dr. Schiopu's report and her adversarial responses to the medical,

vocational and other evidence which supported Plaintiff's claim suggests that Dr. Schiopu was not acting as an independent or impartial medical reviewer.

40. In a letter dated October 15, 2015, Reliance notified Plaintiff that it had again denied her claim for long-term disability benefits under the Policy. In the letter, Reliance also notified Plaintiff she had exhausted her administrative levels of review and could file a civil action lawsuit in federal court pursuant to ERISA.

41. Upon information and belief, Reliance's October 15, 2015 denial letter confirms that it failed to provide a full and fair review and in the process committed numerous ERISA procedural violations due to among other reasons, completely failing to credit, reference, consider, and/or selectively reviewing and de-emphasizing most, if not all of Plaintiff's reliable evidence referenced herein.

42. In evaluating Plaintiff's claim on appeal, Reliance owed her a fiduciary duty and it had an obligation pursuant to ERISA to administer the claim "solely in her best interests and other participants" which it failed to do. [1]

43. Reliance failed to adequately investigate Plaintiff's claim and failed to engage her in a dialogue during its review with regard to what evidence was necessary so she could obtain this evidence in order to perfect her appeal and claim. Reliance's failure in this

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

regard violates ERISA, Ninth Circuit case law and is a reason she did not receive a full and fair review.

44. Plaintiff alleges Reliance provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, by arbitrarily and erroneously creating and inserting a requirement that Plaintiff prove that she was disabled with "objective medical evidence" when the Policy did not require it (and allowing Drs. McCrary and Schiopu to do the same); by failing to adequately investigate her claim because its examining and reviewing medical professionals were not truly independent or fair; by failing to credit Plaintiff's reliable evidence; by providing one sided reviews of Plaintiff's claim that failed to consider all the evidence submitted by her and/or which de-emphasized the medical evidence which supported Plaintiff's claim; by disregarding Plaintiff's subjective complaints and self-reported symptoms; by failing to consider all the diagnoses and/or limitations set forth in her medical evidence as well as the impact the combination of those diagnoses and impairments have on her ability to work; by failing to engage Plaintiff in a dialogue so she could perfect her claim by submitting evidence to cure any defect(s) in order to allow the claim to be approved; and by failing to consider the impact Plaintiff's medications and their side effects would have on her ability to engage in any occupation.

45. Plaintiff alleges the reason Reliance provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to its conflict of interest that manifested as a result of the dual roles Reliance undertook as the decision maker and payor of benefits. Reliance's conflict of interest provided it with a financial incentive to deny Plaintiff's claim and when it did, it saved hundreds of thousands of dollars.

46. Plaintiff is entitled to discovery regarding Reliance's aforementioned conflicts of interest and of its relationship with its third party vendors and *any* individual who reviewed her claim. The Court may properly weigh and consider extrinsic evidence regarding the nature, extent and effect of *any* conflict of interest and/or ERISA procedural violation which may have impacted or influenced Reliance's decision to deny her claim.

47. With regard to whether Plaintiff meets both definitions of disability set forth in the Plan and/or Policy, the Court should review the evidence in Plaintiff's claim *de novo*. Even if the Court concludes the Policy confers discretion, Reliance's unlawful ERISA violations as referenced herein are so flagrant they justify *de novo* review.

48. As a direct result of Reliance's decision to deny Plaintiff's disability claim, she has been injured and suffered damages in the form of lost long-term disability benefits, in addition to other potential non-disability employee benefits she may have been entitled to receive through or from the Plan, from any other Company Plan and/or the Company as a result of being found disabled. Although unknown at present, Plaintiff believes other potential non-disability employee benefits may include but not be limited to, health and other insurance related coverage or benefits, retirement benefits and/or a pension, life insurance coverage and/or the waiver of the premium on a life insurance policy providing coverage for her and her family/dependents.

49. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits as referenced herein, prejudgment interest, reasonable attorney's fees and costs from Defendants.

50. Plaintiff is entitled to prejudgment interest at the legal rate pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for losses she incurred as a result of Defendants' nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A.  For an Order that Plaintiff is disabled and meets the "Regular Occupation" definition of disability set forth in the relevant Plan and/or Policy and that she is entitled to those benefits and any other non-disability employee benefits she may be entitled to as a result of that Order, from the date she was first denied these benefits through the date of judgment with prejudgment interest thereon;

B.  For an Order directing Defendants to continue paying Plaintiff the aforementioned benefits until such a time as she meets the conditions for the termination of those benefits;

C.  For an Order that Plaintiff is disabled and also meets the "Any Occupation" definition of disability set forth in the relevant Plan and/or Policy and that she is entitled to those benefits. Plaintiff also seeks an Order directing Defendants to continue paying her disability benefits pursuant to the Plan and/or Policy's "Any Occupation" definition of disability and any other non-disability employee benefits she may be entitled as a result of that Order until such a time as she meets the conditions for the termination of these benefits, with prejudgment interest thereon;

D.  Alternatively, if the Court concludes it is not able to legally or factually make a determination as to whether Plaintiff meets the "Any Occupation" definition of disability as set forth in the Plan and/or Policy, then Plaintiff seeks an Order remanding her claim to the Plan Administrator so she can proceed through the administrative review process and submit new and additional evidence to the Plan Administrator in order for it to determine whether she meets the Plan and/or Policy's "Any Occupation" definition of disability and is entitled to those benefits, along with the other non-disability employee benefits she seeks as referenced in her prayer for relief;

E.    For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

F.    For such other and further relief as the Court deems just and proper.

DATED this 5th day of February, 2016.

SCOTT E. DAVIS. P.C.

By:   */s/ Scott E. Davis*
       Scott E. Davis
       Attorney for Plaintiff